Cite as 2021 Ark. App. 379

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-20-545

|  |  |
|---|---|
| PROGRESSIVE ELDERCARE SERVICES – MORRILTON, INC., D/B/A/ BROOKRIDGE COVE REHABILITATION AND CARE CENTER; PROGRESSIVE ELDERCARE SERVICES, INC.; JEJ INVESTMENTS, LLC; PONTHIE HOLDINGS, LLC; PROCARE THERAPY SERVICES, LLC; SOUTHERN ADMINISTRATIVE SERVICES, LLC; PROFESSIONAL NURSING SOLUTIONS, LLC; CAREPLUS STAFFING SERVICES, LLC; ROSS PONTHIE; JOHN PONTHIE; AND BOBBI HELTON, IN HER CAPACITY AS ADMINISTRATOR OF BROOKRIDGE COVE REHABILITATION AND CARE CENTER<br><br>APPELLANTS<br><br>V.<br><br>NANCY TAYLOR, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF VIRGINIA RANKIN, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF VIRGINIA RANKIN<br><br>APPELLEE | **Opinion Delivered** October 6, 2021<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT<br>[NO. 15CV-19-183]<br><br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Progressive Eldercare Services – Morrilton, Inc., d/b/a Brookridge Cove

Rehabilitation and Care Center and numerous other associated parties (collectively

"Progressive")[1] bring this interlocutory appeal from an order of the Conway County Circuit Court denying their motion to compel arbitration of a wrongful-death complaint filed by appellee Nancy Taylor, as special administrator of the estate of Virginia Rankin. We find no error and affirm.

## I. *Factual and Procedural Background*

Taylor is Rankin's daughter. On February 23, 2018, Taylor assisted with Rankin's admission to Progressive's nursing-home facility in Morrilton. The nursing-home facility required signatures on necessary admission documents. Taylor signed the admission form for her mother.[2] The admission form requested that Rankin appoint a family member to act as a "responsible party." The admission form then listed two question: "Do you have a power of attorney?" and "Do you have a legal guardian?" Neither question was answered nor was any information produced in response to the following inquiry: "Please state the name of the responsible party and one alternate." Taylor, however, did sign the admission agreement as both "Resident's Representative" and "Resident's Legal Representative."

On the same day, Taylor also signed an arbitration agreement, which was attached to the admission form. She was required to sign the arbitration agreement as a condition of

---

[1]The named defendants were Progressive Eldercare Services – Morrilton, Inc., d/b/a Brookridge Cove Rehabilitation and Care Center; Progressive Eldercare Services, Inc.; JEJ Investments, LLC; Ponthie Holdings, LLC; Procare Therapy Services, LLC; Southern Administrative Services, LLC; Professional Nursing Solutions, LLC; CarePlus Staffing Services, LLC; Ross Ponthie; John Ponthie; and Bobbi Helton, in her capacity as administrator of Brookridge Cove Rehabilitation and Care Center.

[2]The admission document was captioned as the "admission agreement," but for purposes of this opinion, we will refer to it as the "admission form" to avoid confusion with another document, discussed later, captioned as the "arbitration agreement."

2

her mother's admission to the facility.[3] The arbitration agreement contained a box next to the signature line, asking for the identity of the signatory; among the options on the list of signatories were, among others, "resident," "guardian," "power of attorney," "spouse," and "adult children." Taylor checked the box for "adult children." A separate line below the signature block read as follows: "_____ (Check if applicable): A copy of my guardianship papers, durable power of attorney, or other documentation has been provided to the Facility and is attached." The blank was not checked. Taylor signed the arbitration agreement as "Responsible Party."

Four days after signing the admission form and arbitration agreement, on February 27, 2018, Rankin created a durable health care power of attorney appointing Taylor as her attorney-in-fact. The power of attorney granted Taylor the authority to "make any decision [Rankin] could make to obtain or terminate any type of health care" and expressly stated that the grant was "a general power of attorney as to my health care."

Rankin was a resident at Progressive's facility from February 2018 until she passed away in September 2018. Taylor was appointed special administrator of Rankin's estate in October 2018 and filed a wrongful-death lawsuit against Progressive in July 2019. Progressive answered and filed a motion to compel arbitration, asserting that when Taylor executed the nursing-home admission form on her mother's behalf, she also signed a binding agreement to arbitrate that encompassed the claims raised in her lawsuit. Taylor responded

---

[3]The agreement did, however, contain a ten-day right of rescission, which included the following language: "If the right of rescission is exercised, the Resident will not be discharged from the facility."

3

that when she signed the admission form, she signed it individually and lacked the authority to sign on Rankin's behalf.

The circuit court held a hearing on Progressive's motion to compel. At the hearing, Progressive conceded that the power of attorney executed on February 27 did not give Taylor "retroactive authority" to bind her mother to the arbitration agreement that had been signed four days earlier. Progressive contended, however, that Rankin was bound by the agreement under a theory of implied ratification. Progressive argued that because neither Taylor nor Rankin rescinded the contract within ten days as provided in the arbitration agreement, and because Rankin accepted the benefits of the contract by living in the nursing home and accepting care, she impliedly ratified Taylor's execution of the arbitration agreement.

The circuit court rejected Progressive's argument and denied Progressive's motion to compel arbitration, finding that "[o]n the date the arbitration agreement that was the basis of [Progressive's] motion to compel arbitration was executed by Nancy Taylor, Nancy Taylor lacked the requisite authority to enter into the agreement on behalf of Virginia Rankin. Accordingly, the arbitration agreement is unenforceable." The court also explicitly rejected Progressive's arguments regarding ratification. Progressive timely appealed.

## II. *Standard of Review*

We have jurisdiction to hear this interlocutory appeal because an order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2021). *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d 624, 628. We review a circuit court's denial of a motion

4

to compel arbitration de novo on the record. *Id.*, 586 S.W.3d at 628–29. While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Pine Hills Health & Rehab. LLC v. Talley*, 2018 Ark. App. 131, 546 S.W.3d 492.

### III. *Analysis*

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16; however, we look to state contract law to decide whether an agreement to arbitrate is valid. *Progressive Eldercare Servs. v. Everett*, 2021 Ark. App. 353. Arbitration is a matter of contract, and the elements of a contract, including mutual agreement, must be met. *Id.* When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. *Id.*; *Courtyard Gardens Health & Rehab., LLC v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685.

On appeal, Progressive acknowledges the circuit court's finding that on the date the arbitration agreement was executed, Taylor did not have authority to execute the agreement. We agree with the circuit court's conclusion on this issue. The admission form reflected that no power of attorney existed when Taylor executed the admission form and the arbitration agreement. Rather, Taylor was acting solely as Rankin's adult child and not in any representative capacity when these documents were signed. Our case law makes it clear that one who lacks authority to sign an arbitration agreement at the time of signing cannot bind another to arbitration. *See, e.g.*, *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428 S.W.3d 437 (affirming denial of motion to compel arbitration

because the resident's son did not have authority to bind the resident to the agreement); *Hickory Heights Health & Rehab, LLC v. Taylor*, 2020 Ark. App. 98, 596 S.W.3d 536 (adult son lacked authority to agree to arbitration on mother's behalf as part of nursing-home admission). Because Taylor was not vested with the authority to act on Rankin's behalf when she signed the arbitration agreement, Rankin was not bound to the agreement.

Progressive nonetheless contends that the doctrine of implied ratification cured Taylor's lack of authority to enter agreements on Rankin's behalf. Taylor responds that Progressive's ratification argument fails for the simple reason that when the arbitration agreement was signed, no agency relationship existed between her and her mother.[4] We agree with Taylor.

Arkansas recognizes the doctrine of ratification. Our supreme court has said that "[r]atification is a doctrine of agency . . . [that] refers to the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another without authority." *Brady v. Bryant*, 319 Ark. 712, 715, 894 S.W.2d 144, 146 (1995). Under this doctrine, a principal may ratify an unauthorized contractual decision by an agent. *See Sterne, Agee & Leach v. Way*, 101 Ark. App. 23, 31, 270 S.W.3d 369, 376 (2007). Progressive asserts correctly that ratification may be implied rather than express, and implied ratification may be inferred from the acts and words of the principal. *Arnold v. All Am. Assur. Co.*, 255 Ark. 275, 281–82, 499 S.W.2d 861, 866 (1973) (citing *Kirkpatrick Fin.*

---

[4]Progressive conceded this point at the hearing before the circuit court: "[W]e are not saying that this power of attorney, which was executed on the 27th of February, gave Ms. Taylor retroactive authority or something like that, . . . that she had authority on that day."

*Co. v. Stotts*, 185 Ark. 1089, 51 S.W.2d 512 (1932)). The doctrine of ratification, however, has no application if there was no agency relationship. *Sterne, Agee & Leach*, *supra*. As our supreme court explained as far back as 1930, "[a] contract made by one who is not an agent and does not claim to act as an agent cannot be ratified. To permit ratification under such circumstances would be to permit a person to whom an offer was not made to force a contract upon a party who did not mean to deal with him." *Runyan v. Comm. Fund of Little Rock & North Little Rock*, 182 Ark. 441, 31 S.W.2d 743 (1930).

When Taylor signed the nursing-home admission form and arbitration agreement, she made it clear she did not have a power of attorney and was not acting pursuant to one. *See* Ark. Code Ann. § 28-68-109(a) (Repl. 2012).[5] She did not claim to be acting as Rankin's agent on that day. She signed merely as an adult child of Rankin. As a result, Taylor was not Rankin's agent. Because no agency relationship existed when the agreement was signed, the doctrine of ratification is inapplicable.

Progressive nevertheless asserts that Rankin ratified the contracts signed by Taylor "as evidenced by conduct." Progressive points to three actions by Rankin that purportedly indicate ratification of Taylor's actions: (1) Rankin was admitted to the nursing home and received personal, medical, and nursing care as provided for in the admissions agreement, thereby retaining the benefit of the transaction entered into on her behalf by Taylor; (2) after her admission, Rankin granted power of attorney to Taylor, thereby allowing Taylor

---

[5]"*A power of attorney is effective when executed* unless the principal provides in the power of attorney that it becomes effective at a future date or upon the occurrence of a future event or contingency." (Emphasis added.) Rankin's power of attorney contained no "future" provision.

to enter into the contract for admission to the nursing home; and (3) neither Rankin nor Taylor rescinded the agreement.

In order to prevail on this argument, however, Progressive must prove that Rankin had knowledge of Taylor's actions. "[*W*]*hen the principal has knowledge of the unauthorized acts of his agent* and remains silent, when he should speak, or accepts the benefit of such acts, he cannot thereafter be heard to deny the agency but will be held to have ratified the unauthorized acts." *Arnold*, 255 Ark. at 281–82, 499 S.W.2d at 866 (emphasis added); *see also Brady*, 319 Ark. at 715, 894 S.W.2d at 146 ("[T]he affirmance of an unauthorized transaction may be inferred from the failure to repudiate it, or from receipt or retention of benefits of the transaction *with knowledge of the facts*.") (Emphasis added.) Progressive failed to satisfy its burden of proof on this key element of ratification. It put on no proof whatsoever to demonstrate that Rankin had knowledge of the fact that Taylor had signed the admission form and arbitration agreement. Accordingly, Rankin's passive acceptance of care at the nursing home, her subsequent execution of the power of attorney, and her failure to rescind the agreement are insufficient to support a conclusion of implied ratification.

In sum, no principal–agent relationship existed between Rankin and Taylor when Taylor signed the arbitration agreement. In the absence of an agency relationship, ratification is inapplicable. Moreover, even if we were able to find an agency relationship—which we emphatically do not—Progressive still failed to prove that Rankin, as an alleged principal, had knowledge of all the material facts connected with Taylor's signing of the arbitration agreement. We therefore affirm the circuit court's denial of Progressive's motion to compel arbitration and its rejection of Progressive's ratification arguments.

Affirmed.

G<small>RUBER</small> and V<small>AUGHT</small>, JJ., agree.

*Kutak Rock LLP*, by: *Mark W. Dossett* and *Samantha Blassingame*, for appellants.

*Reddick Moss, PLLC*, by: *Matthew D. Swindle*, for appellee.