Cite as 2023 Ark. App. 121

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-121

| | |
|---|---|
| PROGRESSIVE ELDERCARE SERVICES-COLUMBIA, INC., D/B/A THE GREEN HOUSE COTTAGES OF WENTWORTH PLACE; WENTWORTH, LLC, D/B/A THE GREEN HOUSE COTTAGES OF WENTWORTH PLACE; T. MARQUEL (KELLY) PARK, ADMINISTRATOR OF THE GREEN HOUSE COTTAGES OF WENTWORTH PLACE; JOHN DOE I; JOHN DOE II; JOHN DOE III; JOHN DOE IV; AND JOHN DOE V<br><br>APPELLANTS<br><br>V.<br><br>PATRICIA GRIFFIN, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF DOSSIE LEE WILLIAMS, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF DOSSIE LEE WILLIAMS, DECEASED<br><br>APPELLEE | Opinion Delivered March 1, 2023<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14CV-19-282]<br><br>HONORABLE SPENCER G. SINGLETON, JUDGE<br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellants Progressive Eldercare Services-Columbia, Inc., d/b/a The Green House

Cottages of Wentworth Place and numerous other associated parties (collectively

"Progressive") bring this interlocutory appeal from an order denying their motion to compel

arbitration of a complaint filed by appellee Patricia Griffin, as special administrator of the estate of Dossie Lee Williams, deceased, and on behalf of the wrongful-death beneficiaries of Dossie Lee Williams, deceased. Progressive argues that the trial court erred in refusing to enforce a valid arbitration agreement. For the following reasons, we affirm the trial court's order denying Progressive's motion to compel arbitration.

On September 26, 2016, Dossie Lee Williams was admitted to The Green House Cottages of Wentworth Place for medical, nursing, and personal care. Dossie Lee Williams did not sign any of the admission documents; instead, her daughter Pamela Green[1] signed the documents necessary for Dossie's admission. Among the documents signed by Pamela was an admission agreement, which stated:

> The undersigned resident or resident's representative (collectively, the "Resident") hereby requests admission of /s/ Dossie Williams [Name of Resident] to Green House Cottages of Wentworth Place (The "Nursing Facility" or "Facility") for medical, nursing, and personal care. The Nursing Facility and the Resident agree to the following terms for the Resident's care.

The admission agreement required Dossie to appoint a family member to act as the "Responsible Party" in admission, care and treatment, and discharge decisions. Pamela was listed as the responsible party. The admission agreement also asked two questions: "Do you have a power of attorney?" and "Do you have a legal guardian?" Both questions were answered no. Dossie did not sign the admission agreement, but Pamela signed as the "Resident's Representative."

---

[1]Pamela Green is appellee Patricia Griffin's sister.

2

That same day, Pamela also signed an arbitration agreement that was incorporated by the admission agreement. The arbitration agreement was required to be signed as a condition of admission to the nursing home.[2] The arbitration agreement stated that "any claim, dispute, or controversy ("claim") between the parties shall be resolved by final and binding arbitration." The arbitration agreement contained a box next to the signature line asking for the identity of the signatory; the options on the list of signatories were "Resident," "Guardian," "Power of Attorney," "Spouse," and "Adult Children." Pamela checked the box for "Adult Children." A separate line below the signature block read as follows: "_____ (check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation, has been provided to the Facility and is attached." The blank was not checked. Pamela signed the arbitration agreement as the "Responsible Party."

Dossie was a resident of the nursing home from September 26, 2016, through March 6, 2018, and she passed away on March 11, 2018. Patricia Griffin was thereafter appointed special administrator of Dossie's estate. Patricia filed a complaint against Progressive alleging multiple causes of action, including negligence, medical negligence, and violations of the Arkansas Long-Term Care Residents' Rights statute. Progressive filed an answer denying all liability and reserving the right to enforce the arbitration agreement.

---

[2]The agreement contained a ten-day right of rescission, which included language stating that the resident would not be discharged from the facility if the resident exercised his or her right to rescission.

3

Progressive subsequently filed a motion to compel arbitration, contending that the arbitration agreement encompassed the claims in Patricia's complaint. Progressive argued that there was a valid contract between Progressive and Pamela (who had signed both the admission agreement and the arbitration agreement) and that Dossie was a third-party beneficiary to the contract. Progressive also cited the supreme court's decision in *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, and argued that the Federal Arbitration Act ("FAA")[3] preempts our line of third-party-beneficiary arbitration cases because those cases employ arbitration-specific rules with respect to third-party beneficiaries rather than general contract law. Patricia filed a response denying the enforceability of the arbitration agreement and asserting that Pamela lacked the authority to execute the agreement on Dossie's behalf.

The trial court held a hearing on Progressive's motion to compel arbitration. After hearing arguments of counsel, the trial court denied the motion. In so doing, the trial court stated that the motion herein presented the same issues that the trial court had recently rejected in *Courtyard Rehabilitation & Health Center, LLC v. Estate of Tice*.[4]

---

[3] 9 U.S.C. §§ 1–16.

[4] At the time of the hearing below and the entry of the trial court's order denying arbitration, *Tice* was pending before our court on appeal. We have since affirmed that case, holding that the trial court did not err in denying the motion to compel arbitration. *Courtyard Rehab. & Health Ctr., LLC v. Estate of Tice*, 2022 Ark. App. 327. The trial court herein was correct in stating that *Tice* and the instant case involve the same issues.

In this appeal, Progressive challenges the trial court's order denying the motion to compel arbitration. Progressive argues that there was a valid agreement to arbitrate that encompasses the parties' dispute; that Dossie was bound to the arbitration agreement under the third-party-beneficiary doctrine; and that the trial court erred in applying an arbitration-specific rule to the third-party-beneficiary doctrine.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2002). We review a trial court's denial of a motion to compel arbitration de novo on the record. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624. While we are not bound by the trial court's decision, in the absence of a showing that the trial court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Progressive Eldercare Servs.-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

The FAA governs the agreements at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id.* Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Phillips, supra.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* In deciding whether to grant a motion to compel arbitration,

5

two threshold questions must be answered: (1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *Id.* In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *Colonel Glenn Health & Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344. We are also guided by the legal principle that contractual agreements are construed against the drafter. *Id.*

We must first determine whether a valid agreement to arbitrate exists. *Phillips*, *supra*. We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* As the proponent of the arbitration agreement, appellants have the burden of proving these essential elements. *Id.*

Progressive argues that Dossie was a third-party beneficiary to the arbitration agreement signed by Pamela. Two elements are necessary in order for the third-party-beneficiary doctrine to apply under Arkansas law: (1) there must be an underlying valid agreement between two parties, and (2) there must be evidence of a clear intention to benefit a third party. *Ashley Operations, LLC v. Morphis*, 2021 Ark. App. 505, 639 S.W.3d 410. The critical question is whether Pamela signed the arbitration agreement while acting in her individual capacity such that it created an enforceable contract between Pamela and Progressive, with a clear intention to benefit Dossie. Patricia argues that this is not the case because Pamela signed the agreement only as Dossie's representative and not in her individual capacity. We agree with Patricia's argument.

6

When Pamela signed the admission and the arbitration agreements, she is identified as the "Representative" and "Responsible Party," not as a party to the contact itself. The following statement was located above Pamela's signature in the arbitration agreement: "If I am acting as the Resident's Responsible Party and am not the Resident's Guardian or hold power of Attorney for the Resident, I affirm that I have been given the authority to enter into this Arbitration Agreement by the resident and to act on his/her behalf." The language in the arbitration agreement itself contemplated someone signing it with representative authority, not in the person's individual capacity. However, there was no evidence that when the agreements were signed, Dossie authorized Pamela to bind her or act on her behalf. Both agreements contained specific provisions asking whether Pamela had a power of attorney to act on Dossie's behalf or if she was appointed her guardian. In both documents, these provisions were left blank, and such documentation was never provided. There was no evidence that Pamela had such authority. Because there was no valid agreement between Progressive and Pamela or between Progressive and Dossie, the trial court correctly denied the motion to compel arbitration. *See Tice*, *supra*; *Morphis*, *supra*.

Progressive's remaining argument is that the supreme court's holding in *Jorja Trading*, *supra*, conflicts with the trial court's decision and preempts our line of third-party-beneficiary arbitration cases because those cases applied an arbitration-specific rule to the third-party-beneficiary doctrine. Progressive asserts that, in *Jorja Trading*, the supreme court held that a court may invalidate an arbitration agreement, including one governed by the FAA, based

on generally applicable contract defenses, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

We observe that this precise argument was recently raised and rejected by this court in both *Morphis*, *supra*, and *Tice*, *supra*. In *Morphis*, we wrote:

> To the extent that [appellant] argues that the supreme court's ruling in *Jorja Trading, Inc. v. Willis* somehow disposes of our need to resort to state law when determining whether a party is bound by the third-party-beneficiary doctrine, that argument is misplaced. *Jorja* did away with the court's authority to invalidate a provision in an arbitration agreement unless it would likewise invalidate it under Arkansas contract law in general. *Here, before a party can bind another as a third-party beneficiary in **any contract**, he or she must be clothed with the authority to do so.* Therefore, the circuit court's ruling in this case does not contradict the supreme court's holding in *Jorja*.

*Morphis*, 2021 Ark. App. 505, at 10, 639 S.W.3d at 416 (emphasis added). In *Tice*, we stated, "These exact arguments were extensively briefed and rejected by this court in [*Morphis*], and we find no reason to depart from its conclusion." *Tice*, 2022 Ark. App. 327, at 7. Likewise, we find no reason here to depart from *Morphis* or *Tice*.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Kutak Rock LLP*, by: *Samantha Blasingame* and *Caleb S. Sugg*, for appellants.

*David A. Hodges* and *Eric Buchanan*, for appellee.

8